**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NORTHEAST CARPENTERS FUNDS AND THE TRUSTEES THEREOF *et al.*, | |
| Plaintiffs, | Civil Action No. 21-12253 (MAS) (LHG) |
| v. | **MEMORANDUM OPINION** |
| K&K CONTRACTORS LLC *et al.*, | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court on Defendants K&K Contractors LLC ("K&K") and Richard J. Jordan's ("Jordan," and together with K&K, "Defendants") Motion to Partially Dismiss Plaintiffs Northeast Carpenters Funds (the "Fund") and the Trustees Thereof and Eastern Atlantic States Regional Council of Carpenters' (the "Union," and together with the Fund, "Plaintiffs") Complaint. (ECF No. 21.) Plaintiffs opposed Defendants' Motion to Dismiss and filed a Cross-Motion to Amend (ECF No. 24), to which Defendants opposed (ECF No. 30), and Plaintiffs replied (ECF No. 33). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Defendants' Motion to Dismiss and denies Plaintiffs' Cross-Motion to Amend.

**I.   BACKGROUND**

The Court begins with a brief factual recital and the relevant procedural background. As to Defendants' Motion to Dismiss, the Court takes all factual allegations in the Complaint as true and

draws all reasonable inferences in favor of Plaintiffs. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

A.     **Factual Background**

The facts are straightforward. Non-parties Richie Jordan Construction, Inc. ("RJC"), and CJ Contractors NJ, Inc. ("CJC") executed a collective bargaining agreement (the "Agreement") with the Union, whereby RJC and CJC agreed to contributions to the Fund and to hire only Union employees. (Compl. ¶¶ 11-12, ECF No. 1.) Despite those obligations, RJC and CJC failed to do either. As to the delinquent contributions, Chief Judge Wolfson affirmed an arbitration award in 2016 and entered judgment against RJC and CJC for $223,679.90 plus filing fees (the "2016 Arbitration Award"). (*Id.* ¶ 11 (citing *N.J. Regional Council of Carpenters v. CJ Contractors NJ, Inc.*, No. 16-1842 (D.N.J. May 2, 2016), ECF No. 5).)[1] Later, RJC violated the Agreement by hiring non-Union workers for a project in Brick, New Jersey—hiring instead workers from Defendant K&K. (*Id.* ¶ 19.) That violation also made its way through a 2021 arbitration and resulted in a $41,088 judgment owed to the Union and $14,112 in unpaid contributions to the Fund (the "2021 Arbitration Award"). (*Id.* ¶¶ 21-22.)

---

[1] The Complaint does not clearly allege when the unpaid contributions accrued. The 2021 Arbitration Award (attached as an exhibit to the Complaint) asserts that testimony adduced at the arbitration revealed that Jordan stopped paying contributions for RJC and CJC after 2015. (Compl. Ex. A (2021 Arbitration Award), at 10; *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." (citations omitted)).) Conversely, the 2016 Arbitration Award (attached to Defendants' Motion to Dismiss) notes that the Fund sought recovery for "an audit period [of] 2008-2009" and for a "payroll period ending May 6, 2014." (Defs.' Mot. to Dismiss Ex. D (2016 Arbitration Award), at 2, ECF No. 21-3; *see also Pension Benefit Guar. Corp.*, 998 F.2d at 1196 ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." (citations omitted)).)

2

A natural question that arises then: why are K&K and Jordan Defendants here? Plaintiffs' Complaint answers that RJC, CJC, K&K, and Jordan are all one in the same. For example, it alleges that Jordan was "the principal and/or agent" of RJC, CJC, and K&K, which the Complaint defines as "the Jordan Businesses." (*Id.* ¶ 5.) It further alleges that the Jordan Businesses all perform the same type of work, all have the same place of business, and all have working relationships with each other. (*Id.* ¶ 14.) Among other allegations, the Complaint asserts, "[u]pon information and belief," that the Jordan Businesses were "a single integrated enterprise," were "us[ing] equipment, inventory, personnel, and office space interchangeably," and were "intentionally undercapitalized." (*Id.* ¶¶ 16, 25, 27.) According to the Complaint, RJC and CJC have avoided their liabilities to Plaintiffs by "manipulating assets and liabilities"—presumably by maneuvering corporate assets to K&K. (*Id.* ¶¶ 27-28.) The Complaint thus seeks recovery of both arbitration awards against K&K and Jordan because to "[a]llow[] Jordan to maintain the fiction of separate corporate personalities for the Jordan Businesses would sanction fraud and promote injustice." (*Id.* ¶¶ 30, 43.) As to specifics, the Complaint asserts causes of action against Defendants under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 and 1145, for recovery of the 2016 Arbitration Award and against Jordan for breach of fiduciary duty for recovery of the 2021 Arbitration Award. (*Id.* ¶¶ 31-51.)

B.   **Procedural Background**

Defendants filed the instant motion, seeking to partially dismiss Plaintiffs' Complaint. They stress that neither K&K nor Jordan were parties to the 2016 Arbitration Award and that any conduct arising from that award must be time barred. (Defs.' Moving Br. 9-16, ECF No. 21-2.) Defendants further contend that the 2021 Arbitration Award was for unpaid "wages," which are not recoverable under ERISA. (*Id.* 16-17.) Outside one footnote (which notes that ERISA does not

3

allow corporate veil-piercing), however, Defendants' Moving Brief does not take Plaintiffs' alter-ego allegations head on.

Plaintiffs responded to Defendants' Motion by requesting leave to amend. (*See generally* Pls.' Opp'n Br. 6-8, ECF No. 24-3.) The proposed amended complaint swaps out Plaintiffs' breach-of-fiduciary-duty claim with one for breach of the Agreement under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (Proposed Am. Compl. ¶¶ 51-61, ECF No. 24-2.) It further clarifies that K&K was established in 2010, purportedly lending credence to Plaintiffs' alter-ego theory. (*See id.* ¶ 4.) It also alleges that the Agreement between the Union, RJC, and CJC provided that the companies would "not attempt to form or participate in the creation of or operation of new or double-breasted corporations for the purposes of avoiding the obligations of this Agreement." (*Id.* ¶ 12; *see also id.* ¶ 13 (asserting that Jordan executed agreements that extended the Agreement to "govern any corporation, partnership or proprietorship which is deemed to be a controlled entity under the Internal Revenue Code or which is a successor to, joint employer with, or alter ego of [RJC and CJC]" (alteration in original)).) To that end, Plaintiffs' Opposition Brief further clarifies that their "current claims seek to enforce the judgment against [Defendants] by piercing the corporate veil based on well-pled theories of single employer, alter ego and/or successor liability." (Pls.' Opp'n Br. 13, ECF No. 24-3.)

Defendants did not respond kindly to Plaintiffs' proposal. They argue that any amendment would be futile, recycling their earlier statute-of-limitations arguments. (Defs.' Resp. Br. 3, ECF No. 30.) But they add a jurisdictional argument: the Court lacks subject-matter jurisdiction over Plaintiffs' alter-ego claim that seeks to enforce an ERISA judgment. (*Id.* at 3-4 (citing *N.J. Bldg. Laborers' Statewide Benefit Fund v. Llanos Maint. Serv.*, No. 18-13118, 2019 WL 4072932 (D.N.J. Aug. 28, 2019)).) Alternatively, Defendants contend that Plaintiffs' ERISA action is

4

functionally a state-law judgment enforcement action, over which the Court should not exercise supplemental jurisdiction.[2] (*Id.* at 8-10.) As far as the Court can tell, Defendants do not contest Plaintiffs' proposed LMRA claim on the merits.

In reply, Plaintiffs shift the theory on their ERISA claim. Recognizing Defendants' jurisdictional challenge, Plaintiffs assert that their ERISA claim is actually "a claim for direct liability of the alter ego for the underlying ERISA violation." (Pls.' Reply Br. 12, ECF No. 33.) In the alternative, citing state law, they maintain that "federal jurisdiction over the ERISA claims aris[es] from the [2016 Arbitration Award] . . . as an action to enforce a judgment." (*Id.* at 13.)

## II.   LEGAL STANDARD

### A.   Motion for Leave to Amend

Rule 15 "embodies a liberal approach to pleading" *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006). A party may amend its pleading once as a matter of course before being served with a responsive pleading. Fed. R. Civ. P. 15(a)(1)(A). Otherwise, a party may amend its pleading only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). When deciding whether to grant a motion for leave to amend under Rule 15(a), "[a] general presumption exists in favor of allowing a party to amend its pleadings." *Del Sontro v. Cendant Corp. Inc.*, 223 F. Supp. 2d 563, 576 (D.N.J. 2002) (citing *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984)). Further, "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [the plaintiff] ought to be afforded an opportunity to test [the] claim on the merits." *Id.*

---

[2] Both the Complaint and the Proposed Amended Complaint allege that Plaintiffs and Defendants are New Jersey citizens. (Compl. ¶¶ 3-5; Proposed Am. Compl. ¶¶ 1-5.)

### B. Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III. DISCUSSION

Before the Court are interrelated motions, one to partially dismiss the Complaint and one to amend that same Complaint. The Court struggles, however, to effectively resolve these motions because the parties have raised partially briefed jurisdictional challenges. The parties do not raise

these challenges in a typical 12(b)(1) motion. Rather, Defendants raise their jurisdictional challenge in response to a theory raised by Plaintiffs in their cross-motion for leave to amend. Adding to the confusion, Plaintiffs shift the theory of their ERISA claim between a state-law enforcement action and a federal-law direct liability action.[3] Nor does the Proposed Amended Complaint aid the Court's quest for clarity because it does not amend the jurisdictional basis for Plaintiffs' claims.

The Court has an independent obligation to assure itself of its jurisdiction. *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). Here, the jurisdictional problem arises with the Complaint's ERISA claim and the Proposed Amended Complaint's ERISA and LMRA claims. Because the complaints allege that those claims seek recovery of already-awarded judgments, the Court might read those claims as judgment-enforcement actions. "[D]istrict courts do not maintain 'ancillary jurisdiction over new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment.'" *Operative Plasterers & Cement Masons Int'l Ass'n Loc. 8 v. AGJ Constr., LLC*, No. 08-6163, 2009 WL 4796764, at *1 (D.N.J. Dec. 9, 2009) (quoting *Peacock v. Thomas*, 516 U.S. 349, 351 (1996)). But conversely, the Complaint also attempts to allege that Defendants committed independent ERISA violations because they were alter egos of RJC and CJC. The Court has subject-matter jurisdiction over those direct-liability actions. *See Hudson Cnty. Carpenters Loc. Union No. 6 v. V.S.R. Const. Corp.*, 127 F. Supp. 2d 565, 570 (D.N.J. 2000).

---

[3] Although Defendants assert their jurisdictional challenge to Plaintiffs' ERISA claim, it appears to apply to Plaintiffs' LMRA claim as well.

So how can the Court make sense of this jurisdictional mess? To start, neither ERISA nor the LMRA support independent federal jurisdiction over Defendants based on a corporate veil-piercing theory. *See Peacock*, 516 U.S. at 353-54 ("Piercing the corporate veil is not itself an independent ERISA cause of action, but rather is a means of imposing liability on an underlying cause of action." (internal quotation marks and citation omitted)). Instead, the inquiry is trickier. If the Complaint sufficiently alleges that K&K is an alter ego of RJC and CJC, then it may proceed on a theory of "direct liability for an ERISA violation." *Hudson Cnty. Carpenters Loc. Union No. 6 v. V.S.R. Const. Corp.*, 127 F. Supp. 2d 565, 570 (D.N.J. 2000). But if it fails that challenge, the Court will lack jurisdiction because the action will be a state-law enforcement action, over which the Court has no diversity jurisdiction. *See AGJ Const., LLC*, 2009 WL 4796764, at *2-3 ("To qualify as a new ERISA claim, the complaint would have had to allege that a third party was either responsible for commission of the original ERISA violation, or that the third party committed a new and distinct ERISA violation.").

The Court thus analyzes whether the Complaint sufficiently alleges alter-ego liability.[4] In this jurisdictional context, courts often look for allegations of control that may reflect domination by the non-judgment company over the judgment companies at the time of the ERISA violation. *See Ellis*, 389 F.3d at 1036-37; *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 85 F.3d 1282, 1286-87 (7th Cir. 1996) (reasoning that jurisdiction rested on allegations of "common control" between companies). Although close, the Complaint does not meet that test. The ERISA violations allegedly occurred between 2008 and 2014. None of the allegations in the

---

[4] The Court stresses that this inquiry is jurisdictional—that is, the Complaint may very well prevail in state court on theories of third-party liability. *See Ellis v. All Steel Constr., Inc.*, 389 F.3d 1031, 1037 (10th Cir. 2004) ("[T]he operative deficiency here is only one of *federal* jurisdiction; nothing we have said would preclude the prosecution of an alter-ego claim in state court.").

Complaint show that K&K controlled or dominated RJC and CJC at that time. At best, the Proposed Amended Complaint alleges that K&K co-existed with RJC and CJC during that time. (Proposed Am. Compl. ¶ 4.) Co-existence is not the same as common control.

Nor does the Court credit the conclusory allegations that K&K served as RJC's and CJC's alter ego. True, courts look to a familiar list of factors when analyzing alter-ego liability, including whether the companies have "substantially identical management, business purpose, operation, equipment, customers, and supervision, as well as ownership." *Stardyne, Inc. v. NLRB*, 41 F.3d 141, 146, 151 (3d Cir. 1994) (noting as well that "an intent to evade [ERISA] is an important, but not essential factor"). But Plaintiffs' Complaint only conclusorily alleges these factors "[u]pon information and belief." (*E.g.*, ¶ 25 ("At all relevant times, upon information and belief, Jordan personally and repeatedly caused the Jordan Businesses to use equipment, inventory, personnel, and office space interchangeably.").) These allegations do not suffice to show that Defendants were alter egos of RJC and CJC, much less that Defendants dominated those companies. *See Ellis*, 389 F.3d at 1036 (rejecting alter-ego theory where complaint conclusorily alleged elements of alter-ego liability but failed to allege that non-judgment company "exercised any control over [judgment company's] business" or that it "dominated . . . operations during the time the ERISA obligation . . . arose"); *AGJ Constr., LLC*, 2009 WL 4796764, at *3 (rejecting alter-ego theory where "the connection to the underlying ERISA violation of some non-judgment defendants . . . may be attenuated").

Putting it altogether, neither the Complaint nor the Proposed Amended Complaint convinces the Court that it has subject-matter jurisdiction. Both only conclusorily allege alter-ego liability, and neither allege facts showing that Defendants dominated or controlled RJC or CJC. Thus, the Court views Plaintiffs' ERISA and proposed LMRA claims as ones seeking to enforce

a judgment under state law. As the parties lack complete diversity, the Court cannot exercise jurisdiction. Because the Court will grant Plaintiffs an opportunity to amend, they should clarify the following: (1) whether Plaintiffs' claims are direct-liability actions under ERISA and LMRA or state-law judgment-enforcement actions; (2) facts showing how each Defendant dominated and controlled RJC and CJC; and (3) facts showing how each Defendant was an alter ego for RJC and CJC.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss the Complaint without prejudice for lack of subject-matter jurisdiction. Because the Court lacks jurisdiction, it will dismiss without prejudice Defendants' Motion to Dismiss. It further dismisses Plaintiffs' Cross-Motion to Amend because the Proposed Amened Complaint does not correct the jurisdictional deficiencies. An order consistent with this Memorandum Opinion will issue.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE